1          THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF CALIFORNIA
2

3            HONORABLE JANIS L. SAMMARTINO
         UNITED STATES DISTRICT JUDGE PRESIDING
4

5    ------------------------------------------------------

6    UNITED STATES OF AMERICA,       )
                                     )  NO. 15-CR-0131-JLS
7                  PLAINTIFF,        )
                                     )
8    VS.                             )  MARCH 25, 2016
                                     )
9    DANIEL DUSEK,                   )
                                     )  SENTENCING HEARING
10                 DEFENDANT.        )

11   ------------------------------------------------------

12

13   APPEARANCES:

14

15   FOR THE PLAINTIFF:        MARK W. PLETCHER
                               PATRICK HOVAKIMIAN
16                             U.S. ATTORNEY'S OFFICE
                               SOUTHERN DIST. OF CALIFORNIA
                               CRIMINAL DIVISION
17                             880 FRONT STREET, SUITE 6293
                               SAN DIEGO, CA  92101
18

19

20   FOR THE DEFENDANT:        DOUGLAS L. APPLEGATE
                               LAW OFFICES OF DOUGLAS L. APPLEGATE
                               500 WEST HARBOR DRIVE, SUITE 109
21                             SAN DIEGO, CA  92101

22

23

24

25   THE COURT REPORTER:       GAYLE WAKEFIELD, RPR, CRR

1

```
1    MARCH 25, 2016

2                        MORNING SESSION

3         THE CLERK:  NUMBER 8 ON THE CALENDAR, 15-CR-131, UNITED

4    STATES VS. DANIEL DUSEK, FOR SENTENCING.

5         MR. PLETCHER:  GOOD MORNING, YOUR HONOR, MARK PLETCHER

6    AND PATRICK HOVAKIMIAN FOR THE UNITED STATES.

7         THE COURT:  THANK YOU, GOOD MORNING.

8         MR. APPLEGATE:  GOOD MORNING, YOUR HONOR, DOUGLAS

9    APPLEGATE APPEARING ON BEHALF OF DANIEL DUSEK, WHO IS PRESENT

10   IN COURT TODAY.

11        THE COURT:  THANK YOU VERY MUCH.

12        THE COURT HAS READ AND CONSIDERED THE FOLLOWING

13   DOCUMENTS FOR PURPOSES OF SENTENCING THIS MORNING:  THE

14   PRESENTENCE REPORT.  DEFENDANT'S SENTENCING SUMMARY CHART.

15   DEFENDANT'S SENTENCING MEMORANDUM.  DEFENDANT'S NUMEROUS

16   EXHIBITS.  EXHIBIT A, MANY DECLARATIONS AND COMMENDATIONS.

17   B, LETTERS.  C, BEING LETTERS GOING IN A DIFFERENT DIRECTION,

18   MORE COMMUNITY SUPPORT LETTERS.  I ALSO HAVE THE GOVERNMENT'S

19   SENTENCING SUMMARY CHART.  THE GOVERNMENT'S MEMORANDUM IN

20   SUPPORT OF SENTENCING.  I HAVE EXHIBIT 1 ATTACHED TO THAT.

21   I HAVE THE UNDERLYING PLEA AGREEMENT, EXHIBIT 2 HAVING BEEN

22   WITHDRAWN AND NOT BEING CONSIDERED FOR ANY PURPOSE BY THE

23   COURT.

24        WITH THAT, I'M PREPARED TO PROCEED, AND YOU MAY BEGIN,

25   MR. APPLEGATE.
```

1        MR. APPLEGATE:  THANK YOU, YOUR HONOR.  YOUR HONOR, IF

2    I COULD ADDRESS BRIEFLY WITH RESPECT TO THE PRESENTENCE REPORT.

3    I WANTED TO POINT OUT TO THE COURT THAT WITH RESPECT TO THE

4    ALCOHOL CONSUMPTION, AT THE TIME OF THE PRESENTENCE REPORT THAT

5    WAS TRUE AND CORRECT, BUT THAT WAS DURING A PERIOD OF SOBRIETY,

6    AND I BELIEVE THAT IN THE SENTENCING BRIEF I COVERED THE OTHER

7    ISSUES WITH ALCOHOL ONLY FOR THE CONTEXT AND THE BASIS FOR THE

8    RDAP REQUEST.

9        THE COURT:  CORRECT.  I UNDERSTOOD THAT, SO YOU ARE

10   ASKING FOR RDAP TO BE RECOMMENDED FOR YOUR CLIENT --

11       MR. APPLEGATE:  YES, YOUR HONOR.

12       THE COURT:  -- ON THAT BASIS.  VERY WELL.  SO YOU MAY

13   PROCEED.

14       MR. APPLEGATE:  THANK YOU, YOUR HONOR.

15       THE COURT:  CERTAINLY.

16       MR. APPLEGATE:  MAY IT PLEASE THE COURT, YOUR HONOR, I

17   WOULD PREFER THAT MR. DUSEK GO FIRST AND THEN I CAN GIVE SOME

18   COMMENT.

19       THE COURT:  CERTAINLY.  I ALWAYS ASK DEFENDANTS IF THEY

20   WOULD LIKE AN OPPORTUNITY TO ADDRESS THE COURT BECAUSE YOU'RE

21   CERTAINLY ENTITLED TO, MR. DUSEK, AND IF YOU WOULD LIKE TO GO

22   FIRST, SIR, YOU CERTAINLY MAY.

23       THE DEFENDANT:  I WOULD, YOUR HONOR.  I AM HERE TO

24   RECEIVE MY PUNISHMENT AND JUST DESSERTS, YOUR HONOR.  MY

25   RELIGION ALLOWS FOR CONFESSION AND FORGIVENESS OF SINS FROM MY

1    SAVIOR, BUT I WILL NEVER FORGIVE MYSELF FOR MY CRIMINAL DOINGS

2    WITH GLENN DEFENSE MARINE.  I WILL HOLD THIS GUILT IN MY HEART

3    FOR THE REST OF MY LIFE.

4         I RECOGNIZE THAT MY RANK IS MY BIGGEST PROBLEM, AND

5    IT'S ALSO MY DEEPEST REGRET.  I VIOLATED MY OATH OF OFFICE TO

6    THE NAVY AND TO MY COUNTRY.  I KNOW THAT I SHOULD HAVE BEEN

7    HERE TWO YEARS AGO.  SINCE MY ACTIONS IN 2010, I HAVE NOT BEEN

8    ABLE TO LOOK AT MYSELF IN THE MIRROR WITHOUT FEELINGS OF GUILT.

9         WHEN THE GDMA AFFAIR BECAME PUBLIC IN 2013, AND AFTER

10   TALKING TO NCIS AGENTS, I KNEW THAT I ONLY HAD ONE COURSE OF

11   ACTION, I PICKED UP THE PHONE AND I REPORTED MY INVOLVEMENT TO

12   MY COMMANDING ADMIRAL, WELL KNOWING THAT WOULD BE THE END OF MY

13   NAVAL CAREER.

14        AS I WATCHED THE EVENTS UNFOLD THIS PAST TUESDAY IN

15   BRUSSELS, I REALIZED THAT I AM NO LONGER A DEFENDER OF ALL THAT

16   I HOLD DEAR.  MY 27 YEARS OF HONING MY SKILLS TO DEFEND OUR

17   COUNTRY TO THE POINT OF LAYING DOWN MY LIFE ARE FINISHED.  I

18   WOULD DO ANYTHING FOR THE OPPORTUNITY TO LAY DOWN MY LIFE FOR

19   THE COMING FIGHT, AND THAT, TOO, IS A GUILT THAT I WILL NEVER

20   FORGET.  THANK YOU, YOUR HONOR.

21        THE COURT:  THANK YOU, MR. DUSEK, I APPRECIATE THE

22   COMMENTS.

23        GO AHEAD, MR. APPLEGATE.

24        MR. APPLEGATE:  THANK YOU VERY MUCH, YOUR HONOR.  YOUR

25   HONOR, THIS CASE HAS REALLY GONE ON FOR QUITE A LONG PERIOD OF

1      TIME.  IT BEGAN WHEN DANIEL DUSEK WAS APPROACHED BY NCIS AGENTS

2      AND THEY CONFRONTED HIM.  HE WASN'T FORTHRIGHT ON THAT DAY.

3      LEONARD FRANCIS, THE CEO OF GLENN DEFENSE MARINE ASIA, WAS

4      ARRESTED IN THE UNITED STATES IN A MATTER OF DAYS THEREAFTER.

5      AT THAT TIME, WITHIN A MATTER OF DAYS, DANIEL DUSEK PICKED UP

6      THE PHONE, CALLED HIS GROUP ADMIRAL, AND SELF-REPORTED.  THAT'S

7      WHAT I WANT TO POINT OUT IN THIS CASE.  KNOWING THAT THE COURT

8      HAS ALREADY CONSIDERED EVERYTHING THAT'S BEEN BRIEFED, I DIDN'T

9      MEAN TO LEAVE OUT ANYTHING IN THE BRIEF THAT WAS PERTINENT TO

10     THE COURT'S CONSIDERATION.  I'M MERELY HIGHLIGHTING SOME THINGS

11     NOW.

12          I JUST WANT TO POINT OUT THAT THE INVESTIGATION OF

13     GLENN DEFENSE MARINE REALLY BEGAN IN 2010.  IT SHOULD HAVE

14     BEGUN EARLIER BY THE NAVY.  NCIS STARTED IT, COULDN'T FINISH

15     IT, THAT'S WHY WE'RE OVER HERE IN THE UNITED STATES DISTRICT

16     COURT BEFORE YOU.  BUT IN 2010, 2011, 2012, 2013, THE

17     INVESTIGATION WAS GOING FORWARD AND NO NAVAL OFFICERS WERE

18     STEPPING FORWARD AT ALL.

19          THE PLAGUE THAT WAS GLENN DEFENSE MARINE IS RIPE

20     THROUGHOUT THE WESTERN PACIFIC AND THE UNITED STATES NAVY.

21     DANIEL DUSEK WAS THE FIRST ONE TO SELF-REPORT, KNOWING FULL

22     WELL WHAT IT WAS GOING TO MEAN TO HIM AND HIS CAREER, AND HE

23     DID SO QUITE A FEW YEARS AGO BEFORE WE STAND BEFORE YOU HERE

24     TODAY.

25          THERE WILL NOT BE ANY OTHER OFFICERS THAT COME BEFORE

1   YOU OR SAILORS THAT CAN SAY THAT THEY WERE THE FIRST TO

2   SELF-REPORT.  THIS CASE HAS GONE ON SINCE 2010.  I KNOW THAT

3   THE U.S. ATTORNEY'S OFFICE WAS INVOLVED BEFORE THEN.  CAPTAIN

4   DUSEK IS THE ONLY ONE THAT CAME FORWARD.

5       NOW, THERE WAS SOME LEVERAGE AND COERCION, BUT THERE

6   WASN'T AN INDICTMENT.  IT DIDN'T GO TO A GRAND JURY.  HE CAME

7   IN AFTER HE GOT BACK FROM JAPAN, WHERE HE REMAINED FOR

8   APPROXIMATELY EIGHT MONTHS AFTER HE SELF-REPORTED, AND MR.

9   PLETCHER AND I BEGAN EARNEST DISCUSSIONS ON HOW TO RESOLVE THE

10  CASE.  THE NAVY KEPT HIM IN JAPAN.  AS SOON AS CAPTAIN DUSEK

11  CAME BACK, THAT'S WHEN THE PROFFERS BEGAN WITH THE U.S.

12  ATTORNEY'S OFFICE.

13      I ASK THAT THAT BE HIGHLIGHTED IN THE COURT'S MIND

14  BEFORE IT PRONOUNCES SENTENCE IN THE CASE OF DANIEL DUSEK

15  BECAUSE IT'S IMPORTANT TO UNDERSTAND THE MAGNITUDE OF WHAT'S

16  BEEN GOING ON IN THE UNITED STATES NAVY AND THE WESTERN

17  PACIFIC.  I DO NOT MEAN, AND MR. PLETCHER AND I HAVE HAD PLENTY

18  OF DISCUSSIONS, THAT THIS IS AN EXCUSE, A DEFENSE OR EVEN A

19  MITIGATION.  I DO NOT MAKE THAT.  I'M A RETIRED MARINE COLONEL

20  MYSELF AND IRAQ VET.  THIS SHOULD NOT HAVE HAPPENED, BUT THERE

21  STILL REMAINS, AS NOTED IN MY BRIEF, HIGH-RANKING ADMIRALS THAT

22  ARE UNDER INVESTIGATION, CONTINUING TO HOLD POSITIONS, EVEN

23  THOUGH SECURITY CLEARANCES HAVE BEEN PULLED, AND THEY REALLY

24  CANNOT EFFECTIVELY DO THEIR JOB, AND THEY'RE WAITING FOR THE

25  INVESTIGATION TO CONCLUDE, AND THAT'S JUST OPEN SOURCE FROM THE

1    NAVY YARD.  I'VE BEEN INVOLVED IN MILITARY JUSTICE FOR GOING ON

2    FOUR DECADES.

3         I POINT THAT OUT BECAUSE AS DANIEL DUSEK CONFESSES TO

4    THE COURT HIS BIGGEST PROBLEM IS HIS RANK, BUT HE'S NOT GOING

5    TO BE THE SENIOR MOST OFFICER FOR LONG THAT COMES BEFORE THE

6    UNITED STATES DISTRICT COURT TO ANSWER AND GET HIS JUST

7    DESSERTS.

8         ONCE AGAIN, IT'S NOT MITIGATION, YOUR HONOR, AND I'M

9    OFFERING THIS FROM THE STANDPOINT OF TRYING TO LOOK AT THE

10   BROAD RANGES OF WHAT I KNOW THE SENTENCES ARE GOING TO BE, AND

11   HOPEFULLY I'M ARGUING FOR A SENTENCE IN LINE WITH LAYUG,

12   MALAKI, WHO CAME BEFORE YOU LAST MONTH.  IN THAT RESPECT, I

13   WOULD CONTRAST WHAT HAD GONE ON WITH THE TWO CASES THAT HAVE

14   BEEN BEFORE THE COURT, LAYUG, A PETTY OFFICER, AN E4, AN

15   ENLISTED MAN.  HE COOPERATED WITH THE GOVERNMENT FOR

16   THREE YEARS -- EXCUSE ME, COOPERATED WITH GLENN DEFENSE MARINE

17   FOR THREE YEARS BEFORE BEING CONFRONTED AND CHANGING HIS PLEA.

18   MALAKI HAD DEALINGS WITH GDMA FOR FOUR YEARS, AND SENT A

19   THREATENING TEXT OR EMAIL TO DISSUADE SOMEBODY FROM LOOKING AT

20   GLENN DEFENSE MARINE.

21        DANIEL DUSEK COMMITTED THESE CRIMES OVER THE COURSE OF

22   SEVEN MONTHS.  ONE WEEK WOULD HAVE BEEN TOO MANY.  I'M NOT

23   GOING TO TRY TO PUT LIPSTICK ON A PIG BEFORE THE COURT.  BUT I

24   HOPE THE COURT RECOGNIZES THAT IN THE WRITTEN ARGUMENTS

25   PRESENTED TO THE COURT, WHAT I WAS REALLY SPEAKING TO IS A

1     SENTENCE IN LINE, AND ONE LAST COMMENT JUST ABOUT THE WRITTEN

2     PLEADINGS.  THIS IS IN NO WAY A REFLECTION UPON THE U.S.

3     ATTORNEY OR THE DEPARTMENT OF JUSTICE.  I WOULD NOTE THAT THE

4     STATEMENT OF REAR ADMIRAL SAWYER THAT WAS PROVIDED YESTERDAY,

5     AND I UNDERSTAND WHY BECAUSE IT GOT TO MR. PLETCHER'S OFFICE

6     LATE, UNDATED, NOT ON AN OFFICIAL LETTERHEAD, AND IT CERTAINLY

7     WASN'T FROM THE COMMANDER OF THE U.S. PACIFIC FLEET IN

8     HONOLULU.  IT'S BY THE DEPUTY COMMANDER.  I BELIEVE THAT --

9     YOUR HONOR, I CAN SEE THE LOOK ON YOUR FACE.

10          THE COURT:  I DON'T HAVE WHAT YOU'RE REFERENCING.

11          MR. APPLEGATE:  I UNDERSTAND, YOUR HONOR.

12          THE COURT:  AS LONG AS YOU KNOW THAT.

13          MR. APPLEGATE:  I WAS ABOUT -- I SHOULD HAVE STARTED

14    OUT WITH I RECEIVED IT IN A TIMELY MANNER FROM MR. PLETCHER'S

15    RECEIPT, I MIGHT ADD.  I DON'T HAVE ANY DOUBT ABOUT THAT, BUT

16    HE JUST STATED HE WAS GOING TO USE IT IN -- AS A VICTIM

17    STATEMENT, AND I UNDERSTAND THAT.  I WAS JUST COMMENTING ONLY

18    ON THE CONTENT OF THE LETTER AND WHY THE NAVY HAS SORT OF

19    STEPPED BACK AND NOT ADDRESSED THE PROBLEMS.

20          ONCE AGAIN, I'M ONLY RAISING THIS BEFORE THE COURT

21    SOLELY FOR THE PURPOSES OF MY REQUEST, RESPECTFULLY, THAT

22    DANIEL DUSEK RECEIVE A SENTENCE MORE IN LINE WITH WHAT MALAKI

23    RECEIVED.

24          THE RESTITUTION WE'RE READY TO PAY TODAY.  THAT WAS

25    AGREED UPON.

1          THE COURT:  OKAY.

2          MR. APPLEGATE:  THERE WAS A PRESENTENCE REPORT

3     RECOMMENDATION OF A $7,500 FINE.  AND, ONCE AGAIN, MR.

4     PLETCHER'S BEEN VERY FORTHRIGHT, AND WE DISCUSSED THIS IN GREAT

5     DETAIL BEFORE WE CAME HERE TODAY, HE'S REQUESTING $70,000, AND

6     I UNDERSTAND WHY HE'S REQUESTING THAT.  I WOULD POINT OUT TO

7     THE COURT THAT WITH RESPECT ONCE AGAIN TO THE OTHER TWO

8     DEFENDANTS, FROM THE STANDPOINT OF A SENTENCE IN LINE WITH

9     MALAKI AND LAYUG, THAT LAYUG -- THE PETTY OFFICER ROUGHLY MADE

10    ABOUT 40 PERCENT OF WHAT DANIEL DUSEK'S PAY ALLOWANCES WERE,

11    AND HE RECEIVED I BELIEVE A $15,000 FINE.  AND MALAKI WAS A

12    LIEUTENANT COMMANDER, AND HE WOULD HAVE MADE ROUGHLY AROUND

13    65 PERCENT OF WHAT A CAPTAIN IN THE NAVY WOULD MAKE, AND HE

14    RECEIVED A $15,000 FINE.  SO I WOULD ASK FOR A FINE TO BE

15    IMPOSED BY THE COURT THAT WAS MORE IN LINE WITH THOSE

16    SENTENCES.

17          I WOULD ALSO ASK THAT THE COURT IMPOSE NO MORE

18    IMPRISONMENT THAN MALAKI RECEIVED.

19          THIS HAS BEEN A VERY DIFFICULT CASE, BUT THE ONLY THING

20    THAT I WAS -- WANTED TO POINT OUT TO THE COURT THAT I SAW A

21    REDEMPTION BOTH FROM THE NAVY AND REALLY EFFORTS IN THE PACIFIC

22    AND PIVOT TO THE PACIFIC WAS THAT THERE WAS AN OFFICER THAT WAS

23    THE FIRST TO STEP FORWARD AND SELF-REPORT.  I'VE DESCRIBED THE

24    CONTEXT OF THAT, AND HE'S COOPERATED SINCE THEN.  HE STANDS

25    READY TO CONTINUE TO COOPERATE WITH THE GOVERNMENT IN ANY

1    FURTHER INVESTIGATION, AND JUST FROM THE OPEN SOURCES, THERE'S

2    PROBABLY CLOSE TO 200 OFFICERS STILL BEING INVESTIGATED.

3          THERE IS A POSSIBILITY FOR DANIEL DUSEK TO DO THE GOOD

4    WORKS THAT HE WAS CAPABLE OF AND DID FOR A LONG TIME.  THERE

5    WAS SEVEN MONTHS OF ACTIVE CRIMINAL INVOLVEMENT, AND THEN FOR

6    TWO YEARS HE DIDN'T WITHDRAW FROM THE CONSPIRACY, BUT HE STILL

7    REMAINS UNIQUE AMONG EVERYBODY WHO HAS COME BEFORE THIS COURT

8    AND EVERY OTHER OFFICER THAT NO DOUBT WILL COME BEFORE THIS

9    COURT IN THE FUTURE, AND THAT'S WHAT I WOULD PRAY THE COURT

10   TAKE, AND I KNOW THAT THE COURT WILL, TAKE INTO CONSIDERATION

11   IN PRONOUNCING SENTENCE TODAY.  THANK YOU, YOUR HONOR.

12         THE COURT:  THANK YOU.  YOU'VE ALREADY HAD AN

13   OPPORTUNITY, ANYTHING ELSE YOU WANT TO SAY, SIR, OR IS YOUR

14   STATEMENT SUFFICIENT THIS MORNING?

15         THE DEFENDANT:  NO, YOUR HONOR, I HAVE NOTHING ELSE.

16         THE COURT:  THANK YOU.

17         MR. PLETCHER.

18         MR. PLETCHER:  THANK YOU, YOUR HONOR.  GOOD MORNING.

19         THE COURT:  GOOD MORNING.

20         MR. PLETCHER:  THE DEFENDANT IS UNIQUE.  THIS CASE IS

21   UNIQUE EVEN AMONG THE OTHER CASES THAT HAVE COME BEFORE THE

22   COURT.  MR. APPLEGATE CORRECTLY TELLS THE COURT, AS DID CAPTAIN

23   DUSEK, THAT HE'S THE HIGHEST-RANKED OFFICER CHARGED, AND HE'S

24   THE HIGHEST-RANKED OFFICER YET BEFORE THE COURT FOR SENTENCING.

25   THAT SINGLE FACTOR ALONE DRIVES THE COURT'S DECISION IN THIS

1    CASE.

2         THIS CONSPIRACY, YOUR HONOR, IS CHARGED TO BEGIN IN

3    JULY OF 2010.  BEFORE THAT TIME, GDMA ENGAGED IN A RECRUITING

4    EFFORT OF CAPTAIN DUSEK KNOWING FULL WELL HIS POTENTIAL VALUE

5    TO THE CONSPIRACY.  HE WAS IN AN INCREDIBLY INFLUENTIAL

6    POSITION IN THE SEVENTH FLEET AS THE DEPUTY DIRECTOR OF

7    OPERATIONS.  IN THAT CAPACITY, WORKING, AS HE DESCRIBES TO THE

8    COURT, DAY AND NIGHT, HE HAD INPUT INTO THE VITAL DECISIONS OF

9    THE SEVENTH FLEET'S OPERATIONAL MISSION, INCLUDING THE MOVEMENT

10   OF SHIPS, THE SCHEDULING OF PORT VISITS, AND FRANKLY, YOUR

11   HONOR, EVERYTHING THAT'S OPERATIONAL AS FAR AS THE SEVENTH

12   FLEET OF THE UNITED STATES NAVY GOES.

13        IN THIS CAPACITY, YOUR HONOR, HE HAD ACCESS TO VITAL

14   CLASSIFIED INFORMATION, SECRETS THAT OUR COUNTRY HAS VALUED THE

15   MOST SIGNIFICANTLY.  HE ALSO HAD TRAINING AND TRAINING AND

16   TRAINING, WELL SUFFICIENT TO FUNDAMENTALLY UNDERSTAND THAT THE

17   TRANSMISSION OF CLASSIFIED INFORMATION TO ANY PERSON WHO WAS

18   UNAUTHORIZED WAS ILLEGAL, THAT THAT PERSON IS AN UNAUTHORIZED

19   FOREIGN NATIONAL IS UNDERSCORED IN ALL OF THIS TRAINING.

20   THESE, YOUR HONOR, ARE UNAMBIGUOUS RULES UNDERSTOOD BY ANYONE,

21   ANYONE WITH A CLEARANCE OF SECRET OR HIGHER.

22        ON JULY 13TH, 2010, THE RECRUITING EFFORT WAS COMPLETE.

23   EXHIBIT 1 DESCRIBES IN ABUNDANT CLARITY THE BEGINNINGS OF A

24   CONSPIRACY.  GDMA WRITING TO EACH OTHER, "DAN IS AN OFFICIAL

25   GDMA CARD HOLDER.  ATTACHED ARE THE SCHEDULES HE PROVIDED.  HE

1    WAS PRETTY COOL, AND HE SAID HE WASN'T WORRIED ABOUT THE

2    SECURITY ONE BIT."

3         YOUR HONOR, MAYBE SINGULARLY AMONG THE EVIDENCE IN THIS

4    CASE, THAT SERVES AS A CLEAR TOLLING OF THE BELL.  FROM THAT

5    POINT FORWARD CAPTAIN DUSEK WAS EFFECTIVELY ON GDMA'S PAYROLL.

6    HE DID WHAT HE WAS ASKED BY ED ARUFFO AND LEONARD FRANCIS ON

7    BEHALF OF GDMA.

8         I WANT TO MAKE SURE THE COURT UNDERSTANDS, THERE'S NO

9    EVIDENCE IN THIS CASE THAT ANYTHING HE DID HE BELIEVED AT THE

10   TIME TO BE TO THE DETRIMENT OF THE NAVY.  I'M NOT SUGGESTING

11   THAT HE WAS ACTING IN APPOSITE DIRECTION OF THE NAVY.  HE

12   SIMPLY WAS ACTING, IN ADDITION, TO BENEFIT GDMA AS THOSE

13   OPPORTUNITIES AROSE.

14        APPROXIMATELY THIS TIME, YOUR HONOR, AND THE LETTERS

15   SUBMITTED BY CAPTAIN DUSEK TO THE COURT ARE TELLING IN THIS

16   REGARD, HE WAS SELECTED FOR PROMOTION TO MAJOR COMMANDS, TO

17   CAPTAIN 06, AND THIS IS A PARTICULARLY IMPORTANT EVENT.  IT

18   CAN'T BE UNDERSTATED.  AND THE LETTERS -- HOW MANY LETTERS ARE

19   THERE EXTOLLING HIS PROMOTION UNDERSCORE THE POINT PERFECTLY.

20        SOME OF THE LETTERS EXCERPTED SAY, "I OBSERVED DAN

21   CONTRIBUTING SUBSTANTIVELY TO THE OPERATION'S DECISION-MAKING

22   OF THE SEVENTH FLEET.  THERE IS NO HIGHER AWARD OR MORE

23   IMPORTANT JOB.  THE NAVY AND NATION HAVE PREVIOUSLY ENTRUSTED

24   YOU WITH STEWARDSHIP OF NATIONAL ASSETS.  THE STAKES JUST GOT

25   HIGHER.  PERSONAL CONDUCT MUST BE OF THE HIGHEST STANDARD, SO

1    SOME INTROSPECTION WOULD BE HELPFUL PRIOR TO ASSUMING COMMAND.

2    THIS IS A TESTAMENT TO THE TRUST LEADERS HAVE IN YOUR ABILITY

3    TO COMMAND AND CONTINUE TO MAKE A POSITIVE LASTING CONTRIBUTION

4    TO THE NAVY.  YOU, DAN DUSEK, ARE A CUT ABOVE YOUR PEERS."

5         THIS IS CONCURRENT TO THE PERIOD OF TIME WHEN CAPTAIN

6    DUSEK WAS EFFECTIVELY SERVING ON THE GDMA PAYROLL AT THE SAME

7    TIME THAT HE WAS WORKING AS N3 OF THE SEVENTH FLEET.  AS SET

8    FORTH IN THE PLEA AGREEMENT, YOUR HONOR, HE PROVIDED SHIP

9    SCHEDULES, CLASSIFIED SHIP SCHEDULES TO ED ARUFFO AND GDMA

10   DOZENS OF TIMES, DOZENS OF TIMES, AND WHENEVER SPECIFICALLY

11   REQUESTED TO DO SO.

12        ONE INSTANCE THAT WE REPORTED IN THE -- IN OUR

13   SENTENCING PAPERS SPEAKS SPECIFICALLY TO SUBMARINE SCHEDULES.

14   LAST TIME I WAS BEFORE THE COURT WE DESCRIBED THE IMPORTANCE --

15   THE HEIGHTENED IMPORTANCE OF SUBMARINE SCHEDULES.  OUR

16   SUBMARINER FLEET OPERATES IN SECRET AND CANNOT BE EFFECTIVE IF

17   ITS WHEREABOUTS ARE KNOWN.

18        BUT IN ADDITION TO THOSE TWO OFFICIAL ACTS THAT THE

19   COURT HAS HEARD ABOUT BEFORE, THIS DEFENDANT ALSO USED HIS

20   POSITION AND INFLUENCE WITHIN THE UNITED STATES NAVY AS

21   OPPORTUNITIES AROSE TO BENEFIT GDMA.  THIS IS IN ADDITION TO

22   THE CONDUCT THAT YOU HEARD ABOUT WITH LS1 LAYUG AND LIEUTENANT

23   COMMANDER MALAKI.  THIS DIFFERENTIATES AND AGGRAVATES CAPTAIN

24   DUSEK'S CONDUCT.

25        THE OCTOBER 3RD EMAIL EXCHANGE WITHIN GDMA IS --

1      ENCAPSULATES THIS IDEA PERFECTLY.  ED ARUFFO, WRITING TO

2      LEONARD FRANCIS EXPLAINING PREFERENCES FOR GDMA'S SHIP VISITS

3      AT PARTICULAR PORTS, "I WILL HAVE DUSEK OUT THIS WEEK AND I

4      WILL TAKE CARE OF HIM," THAT MEANS DINNER, AND SERVICES OF A

5      PROSTITUTE, AND ENTERTAINMENT, "AND TRY TO FUNNEL AS MUCH

6      TRAFFIC OUT OF SINGAPORE," A DISFAVORED PORT, "AND UNDERSTAND

7      THAT THE PREFERENCE IS PKCC."  THAT'S PORT KLANG, "AND

8      THAILAND."  FRANCIS REPLIED, "INIMITABLY, DUSEK IS A GOLDEN

9      ASSET TO DRIVE BIG DECKS INTO OUR FAT REVENUE GDMA PORTS,

10     PHUKET, LAEM CHABANG, PKCC, AND NOW KOTA KINABALU, PLUG THAT

11     INTO HIS EAR."

12          AND THEN WE SEE, YOUR HONOR, AN EVOLUTION OF DAN DUSEK

13     EXERCISING HIS INFLUENCE TO MOVE, TO INFLUENCE, TO PERSUADE, TO

14     ADVOCATE FOR GDMA'S BUSINESS PLAN, FIRST AND FOREMOST, THE

15     AIRCRAFT CARRIER UNITED STATES -- USS ABRAHAM LINCOLN.  THAT

16     AIRCRAFT CARRIER DAN DUSEK ADVOCATED TO MAKE A PORT VISIT AT

17     PKCC, AT THE PORT KLANG CRUISE CENTRE, MAYBE ALONE IN THE WORLD

18     A DEEP-WATER PORT OWNED BY LEONARD FRANCIS, NOT OWNED BY THE

19     GOVERNMENT OF MALAYSIA, NOT OWNED BY A QUASI-GOVERNMENTAL

20     ORGANIZATION, BUT OWNED BY LEONARD FRANCIS.

21          TO THIS END, DAN DUSEK EMAILED ED ARUFFO ON AUGUST 21ST

22     REPORTING, "A GOOD DISCUSSION WITH THE ADMIRAL TODAY" AND

23     "CONVINCED HIM THAT PKCC WAS THE BETTER CHOICE."  IN A

24     FOLLOW-UP CONVERSATION, DAN DUSEK REPORTED, "A LOT OF PUSHBACK

25     ON PKCC," BUT THAT HE WOULD BE ABLE TO OVERCOME AND GET THE

1    CARRIER INTO PKCC.

2              IN FACT, USS ABRAHAM LINCOLN VISITED PORT KLANG BETWEEN

3    OCTOBER 8TH AND OCTOBER 10TH, 2010, AT A COST OF $1.6 MILLION

4    TO THE UNITED STATES NAVY, MUCH OF WHICH INCLUDED FRAUDULENT

5    BILLINGS TO THE UNITED STATES NAVY IN THE FORM OF FRAUDULENT

6    INCIDENTAL EXPENSES AND FRAUDULENT PORT TARIFF CHARGES BY GDMA.

7    NEXT UP THE PELELIU, TRYING TO MOVE THAT SHIP AND ITS ASSOCIATE

8    SHIPS INTO PKCC.

9              AND THEN TO AGGRAVATE THE CONDUCT FURTHER, AFTER BEING

10   APPROACHED BY NCIS, BUT BEFORE SELF-REPORTING, DAN DUSEK

11   DELETED HIS EMAILS IN HIS EMAIL ACCOUNT IN AN EFFORT TO EVADE

12   DETECTION BY LAW ENFORCEMENT.

13             YOUR HONOR, AT THIS POINT, MR. APPLEGATE REFERENCED A

14   LETTER I RECEIVED YESTERDAY FROM REAR ADMIRAL P.G. SAWYER, THE

15   DEPUTY COMMANDER OF THE U.S. PACIFIC FLEET, UNITED STATES NAVY.

16   THEY SUBMITTED THIS -- THE NAVY HAS SUBMITTED THIS AS A VICTIM

17   IMPACT STATEMENT.  I WOULD LIKE TO READ IT TO THE COURT AND

18   INTO THE RECORD.

19             MY NAME IS REAR ADMIRAL P.G. SAWYER, AND I CURRENTLY

20   SERVE AS THE DEPUTY COMMANDER U.S. PACIFIC FLEET IN PEARL

21   HARBOR, HAWAII.  A ROLE OF U.S. PACIFIC FLEET IS TO ADVANCE

22   INDO-ASIA-PACIFIC REGIONAL MARITIME SECURITY AND STABILITY BY

23   EMPLOYING U.S. PACIFIC FLEET FORCES IN SUPPORT OF COMMANDER,

24   U.S. PACIFIC FLEET COMMAND --

25             THE COURT:  GO SLOWLY SO WE HAVE AN ACCURATE RECORD.

1          MR. PLETCHER:  MY APOLOGIES.

2          THE U.S. PACIFIC FLEET IS CHARGED WITH THE CARE AND

3     SAFETY OF 97,000 ACTIVE DUTY, 9,400 RESERVIST AND 21,000 NAVY

4     CIVILIANS SUPPORTING OVER 199 SHIPS, SUBMARINES AND 1,127

5     AIRCRAFT.

6          WE ARE AN ORGANIZATION COMMITTED TO PRESERVING A

7     RESILIENT WORK FORCE, AND WE PROACTIVELY VALUE OUR MILITARY AND

8     CIVILIAN SAILORS AND THEIR FAMILIES.  WE ARE A NAVY BUILT ON

9     TRUST AND INTEGRITY, AND WE DEMAND BEHAVIOR THAT REFLECTS OUR

10    VALUES OF HONOR, COURAGE AND COMMITMENT.  ANYTHING LESS,

11    REDUCES OUR ABILITY TO FUNCTION AS REQUIRED BY OUR NATION.

12         THE GLENN DEFENSE MARINE ASIA SCANDAL AND THE

13    MISCONDUCT OF THOSE CONVICTED, BREACHED THIS TRUST WITHIN THE

14    NAVY LIFELINES AND ERODED THE PUBLIC'S CONFIDENCE IN THE U.S.

15    NAVY.  THE DISHONORABLE ACTS OF A FEW HAD HUGE RAMIFICATIONS ON

16    MANY.  THE DELIBERATE MISHANDLING OF SENSITIVE INFORMATION, IN

17    THE FORM OF SHIPS' PORT VISIT SCHEDULES, PUT OUR MISSION, OUR

18    SHIPS, AND OUR SAILORS AT INCREASED RISK OF HARM.

19         I WAS EXTREMELY DISAPPOINTED TO LEARN THAT ONE OF OUR

20    OWN, CAPTAIN DANIEL DUSEK, COMPROMISED HIS INTEGRITY, BROKE THE

21    LAW, AND VIOLATED THE TRUST BESTOWED UPON HIM.  WHILE ASSIGNED

22    AS THE DEPUTY DIRECTOR OF OPERATIONS OF U.S. 7TH FLEET AND

23    LATER AS EXECUTIVE OFFICER ON THE USS ESSEX AND COMMANDING

24    OFFICER OF THE USS BONHOMME RICHARD, HE ADMITTED TO BETRAYING

25    HIS NATION AND HIS NAVY, PLEADING GUILTY TO ONE COUNT OF

1    CONSPIRACY TO COMMIT BRIBERY.  THIS BREACH SET INTO MOTION A

2    SIGNIFICANT EFFORT TO REDUCE VULNERABILITIES AND MITIGATE THE

3    RISK OF OUR NAVY AND OUR NATION WHEN CONDUCTING PORT VISITS TO

4    PREVENT UNSCRUPULOUS INDIVIDUALS FROM EVER AGAIN EXPLOITING OUR

5    OPERATIONS FOR PERSONAL GAIN.

6         TO BETTER UNDERSTAND THE HARMFUL EFFECT OF THE GLENN

7    DEFENSE MARINE ASIA SCANDAL, AND THE CONDUCT OF CAPTAIN DUSEK

8    IN PARTICULAR, IT IS NECESSARY TO PROVIDE SOME DETAIL REGARDING

9    PORT VISITS BY U.S. NAVY SHIPS.  THE IMPORTANCE OF PORT VISITS

10   BY U.S. NAVY SHIPS CANNOT BE UNDERSTATED AND UNDERPINS OUR

11   ABILITY TO PROJECT POWER, ENHANCE STABILITY, PROMOTE MARITIME

12   SECURITY, DETER AGGRESSION AND ENSURE FREEDOM OF THE SEAS.  THE

13   PRESENCE OF A U.S. NAVY SHIP IN A FOREIGN PORT SHOWS THE U.S.

14   FLAG, LITERALLY AND FIGURATIVELY.  OUR PRESENCE IN THESE AREAS

15   SERVES TO REASSURE PARTNER NATIONS OF OUR RESOLVE TO A CREDIBLE

16   FORWARD PRESENCE AND RESPOND WHEN CALLED UPON.  THE LEADERSHIP

17   OF THE U.S. NAVY, FROM THE COMMANDER OF THE U.S. PACIFIC FLEET

18   DOWN TO THE COMMANDING OFFICER OR MASTER OF OUR SHIPS,

19   INFLUENCES AND DIRECTS THE PLANNING OF PORT VISITS, WHICH MUST

20   BE DONE IN A MANNER MOST BENEFICIAL TO THE LONG-TERM U.S.

21   STRATEGIC INTERESTS.  A STABLE, PROSPEROUS, INDO-ASIA-PACIFIC

22   REGION, WHERE DISPUTES BETWEEN NATIONS ARE RESOLVED PEACEFULLY

23   AND IN ACCORDANCE WITH INTERNATIONAL LAW, IS PARAMOUNT.

24        BY CONSPIRING WITH GLENN DEFENSE MARINE ASIA, THE

25   PLANNING AND EXECUTION OF PORT VISITS WAS INFLUENCED BY THE

1    DISHONORABLE ACTS OF INDIVIDUALS PROMOTING THE BEST INTERESTS

2    OF GLENN DEFENSE MARINE ASIA AND THEIR OWN SELF-INTEREST.  U.S.

3    PACIFIC FLEET QUICKLY RESPONDED TO THE SCANDAL WITH A

4    DISPROPORTIONATE REALIGNMENT OF LIMITED RESOURCES TO ADDRESS

5    THE HARM CREATED BY THE UNSCRUPULOUS ACTS OF A FEW, WHEN OUR

6    RESOLVE SHOULD HAVE CLEARLY BEEN FOCUSED ON STRENGTHENING OUR

7    NETWORK OF NAVAL FORCES TO FURTHER STRATEGIC INTERESTS.

8    SIGNIFICANT SENIOR LEVEL EFFORTS WERE EXPENDED TO

9    ENSURE THE U.S. NAVY'S ADMINISTRATIVE PROGRAM HAD THE PROPER

10   RESOURCES AND ATTENTION TO MONITOR HOW WE PLAN AND EXECUTE PORT

11   VISITS.  THIS INCLUDED EFFORTS TO CREATE AND FILL ELEVEN NEW

12   GEOGRAPHICALLY DISPERSED POSITIONS THROUGHOUT THE

13   INDO-ASIA-PACIFIC REGION TO PROVIDE DIRECT OVERSIGHT OF U.S.

14   NAVY PORT VISITS.

15   THE SECONDARY AND TERTIARY EFFECTS OF THIS SCANDAL

16   MANIFESTED IN THE FORM OF FURTHER DISRUPTION CAUSED BY THE NEED

17   TO RE-ASSIGN NAVAL OFFICERS, OFTEN ON SHORT NOTICE, TO FILL NEW

18   OVERSIGHT POSITIONS.  THIS DISRUPTION HAS AFFECTED BOTH JUNIOR

19   AND SENIOR OFFICERS, CAUSING HARM THROUGHOUT THE NAVY IN A

20   MANNER THAT IS DIFFICULT TO QUANTIFY, BUT IS NONETHELESS

21   NEGATIVE.

22   THE GLENN DEFENSE MARINE ASIA SCANDAL, AND THE

23   MISCONDUCT OF THOSE CONVICTED, ADVERSELY IMPACTED U.S. PACIFIC

24   FLEET'S ABILITY TO MOST EFFECTIVELY PURSUE THE INTERESTS OF OUR

25   NATION, AND TO TAKE CARE OF OUR SAILORS.  HOWEVER, TO CONCLUDE,

1    I DO WISH TO EMPHASIZE THAT DESPITE THE HARM AND DISRUPTION,

2    I'M EXTREMELY PROUD OF THE WAY THE U.S. PACIFIC FLEET REACTED

3    TO THIS SCANDAL, DEMONSTRATING A COMMITMENT TO MAKING THINGS

4    RIGHT, WHICH WAS TRULY AWE-INSPIRING.  WHILE THE MISDEEDS OF A

5    FEW OF OUR MEMBERS HAVE MADE THINGS DIFFICULT, I HAVE COMPLETE

6    CONFIDENCE THAT THE DEDICATED MEN AND WOMEN WILL SUCCEED IN

7    TAKING US TO NEW HEIGHTS OF PERFORMANCE AND RESPECT.

8    RESPECTFULLY SUBMITTED, P.G. SAWYER, REAR ADMIRAL, U.S. NAVY."

9        YOUR HONOR, IN THIS CASE, THE UNITED STATES HAS

10   RECOMMENDED AN APPROPRIATE SENTENCE OF 44 MONTHS INCARCERATION,

11   AND A $70,000 CRIMINAL FINE.  THIS ACCOUNTS FOR THE CONDUCT

12   FIRST AND FOREMOST, THE CONDUCT PASSING CLASSIFIED INFORMATION

13   IN THE FORM OF SURFACE SHIP SCHEDULES, THE AGGRAVATED CONDUCT

14   OF PASSING CLASSIFIED INFORMATION IN THE FORM OF SUBMARINE

15   SCHEDULES, AND IN THIS CASE, THE FURTHER AGGRAVATED CONDUCT OF

16   USING CAPTAIN DUSEK'S SIGNIFICANT POSITION OF AUTHORITY AND

17   RESPONSIBILITY TO, AS OPPORTUNITIES AROSE, BENEFIT GDMA.

18       THE DEFENDANT HERE POINTED OUT, AND I AGREE, THAT HE

19   HAD ABUNDANT OPERATIONAL AND ETHICAL TRAINING TO IDENTIFY

20   ISSUES SUCH AS THESE AND AVOID THEM.  HE DID NOT.  HE DID NOT

21   USE THE TRAINING THAT THE NAVY GAVE HIM.  HE DID NOT EMPLOY THE

22   ETHICS THAT HE NOW SPEAKS ABOUT IN OVERCOMING THE OVERTURES OF

23   GDMA AND INSTEAD LET HIS BASE GREED AND DESIRES TAKE HOLD.

24       THE CONDUCT, YOUR HONOR, AS FOOTNOTE 1 POINTS OUT ALSO,

25   AS FAR AS THE SENTENCING GUIDELINES GOES, IS UNDERSTATED AND

1    THE PSR DOES A NICE JOB OF DESCRIBING -- THANK YOU -- THIS

2    CONFLICT AT PARAGRAPHS 114 TO 116.  CLASSIFIED INFORMATION IS

3    HARD TO QUANTIFY.  THE VALUE OF THE INFORMATION IN THE ETHER IS

4    DIFFICULT.  CERTAINLY IN THE HANDS OF THOSE PEOPLE WHO WOULD

5    USE IT FOR ILL, THE INFORMATION IS EXTREMELY VALUABLE AND COULD

6    CAUSE DESTRUCTION AND LOSS BEYOND CONTEMPLATION.

7        OUR RECOMMENDATION IS INFORMED BY THE DEFENDANTS'S

8    RANK, FIRST AS COMMANDER, THEN IN MAY OF 2006 AS CAPTAIN

9    SELECT, AND THEN WHEN HE WAS FULLY PROMOTED IN SEPTEMBER OF

10   2011 TO THE RANK OF CAPTAIN.  I THINK THE COURT UNDERSTANDS,

11   GIVEN THE AMOUNT OF COMMENTARY ON THIS RANK ISSUE, BEING A

12   CAPTAIN IN THE UNITED STATES NAVY IS TO BE UNQUESTIONED NAVY

13   ROYALTY.  IT IS A POSITION THAT FEW IN THE HISTORY OF OUR

14   COUNTRY HAVE EVER ATTAINED.  IT IS A POSITION OF EXTRAORDINARY

15   POWER AND RESPONSIBILITY, AND IT IS A POSITION, YOUR HONOR,

16   WHERE YOUR ACTIONS WITHIN THE NAVY ARE FUNCTIONALLY

17   UNQUESTIONED.

18       WE ALL AGREE -- I APPRECIATE CAPTAIN DUSEK'S PERSONAL

19   WORDS TO THE COURT ON THIS ISSUE -- THAT HE FAILED TO SAFEGUARD

20   THE TRUST THAT THE NAVY HAD PUT IN HIM, ITS SENIOR OFFICERS AND

21   THOSE WHO PROMOTED HIM TO MAJOR COMMAND.

22       MR. APPLEGATE WAS CLEAR, AND I WILL UNDERSCORE, THIS

23   WAS NOT A SINGLE ABERRANT ACT.  TRUE, THE CONDUCT TOOK PLACE

24   OVER THE COURSE OF SEVEN MONTHS, MAYBE NOT A YEAR OR TWO YEARS

25   AS SOME OF THE OTHER PEOPLE, BUT SEVEN MONTHS.  WHAT THE COURT

1    SHOULD UNDERSTAND THOUGH IS THAT WHILE COMMANDER MALAKI'S

2    CONDUCT SPANNED A LONGER PERIOD OF TIME, THAT CONDUCT WAS

3    INTERMITTENT OVER THAT TIME, WHEREAS CAPTAIN DUSEK IN HIS

4    POSITION AS N3 HAD IMMEDIATE AND DAILY ACCESS TO THE

5    INFORMATION THAT LEONARD FRANCIS AND GDMA WANTED, AND THEY WERE

6    ASKING FOR IT, AND HE WAS PROVIDING IT ON FREQUENT OCCASION.

7    HE PROVIDED JUST CLASSIFIED SHIP SCHEDULES DOZENS AND DOZENS OF

8    TIMES AND WHENEVER SPECIFICALLY REQUESTED OVER THAT SEVEN-MONTH

9    PERIOD.

10            DELETING HIS EMAIL ACCOUNT, YOUR HONOR, STANDS, FROM MY

11    PERSPECTIVE, AS A FULL ACKNOWLEDGMENT OF GUILT.

12            YOUR HONOR, FURTHER, A SENTENCE OF 44 MONTHS IN THIS

13    CASE WILL PROMOTE RESPECT FOR THE LAW, NOT JUST IN THE ETHER,

14    BUT IT WILL GIVE A TANGIBLE MANIFESTATION, NOT JUST THAT THE

15    LAW IS PARAMOUNT BUT NO ONE, REGARDLESS OF RANK, IN OUR COUNTRY

16    IS ABOVE IT.

17            THE DEFENDANT ACKNOWLEDGES THE NEED FOR GENERAL

18    DETERRENCE, WHICH I REPEAT HE SAYS, "MY LEGACY IN THE NAVY WILL

19    STAND AS A SEVERE WARNING TO OTHERS WHO MAY BE TEMPTED." THIS

20    COURT'S SENTENCE OF 44 MONTHS WILL UNDERSCORE THAT AS WE

21    CONTINUE TO SEND PEOPLE INTO PLACES WHERE CONTRACTORS SEEK

22    INFORMATION, OR FOREIGN OPERATIVES SEEK INFORMATION, OR OTHERS

23    WHO WOULD ATTACK US SEEK INFORMATION, THAT IT IS NOT OKAY TO

24    GIVE IT AWAY.

25            FINALLY, YOUR HONOR, JUST A FEW WORDS ABOUT THE ABILITY

1   WITH THIS SENTENCE OF 44 MONTHS TO ACHIEVE PROPORTIONALITY.  I

2   THINK BEYOND THE ISSUE OF THE DEFENDANT'S RANK, AND BEYOND THE

3   ISSUE OF THE DEFENDANT ACTING TO BENEFIT GDMA AS OPPORTUNITIES

4   AROSE, THIS IS AS SIGNIFICANT A CONSIDERATION IN SENTENCING.

5   THE DEFENDANT CLAIMS IN HIS PAPERS THAT HE'S AT THE BOTTOM OF

6   THE SERIOUSNESS SPECTRUM IN GDMA.  THAT IS FALSE.  EVERYONE IN

7   THIS CONSPIRACY HAD THEIR ROLE, AND, AS MR. YOUNG DESCRIBED

8   LAST WEEK, THE CORRUPTION DROVE THE FRAUD, AND IN TURN THE

9   FRAUD FILLED THE TROUGH OF LAVISH THINGS OF VALUE TO FEED THE

10  CORRUPTION, AND AROUND AND AROUND WE GO.

11       IN RETURN, THESE OFFICIALS PROVIDED OFFICIAL ACTS OF

12  OPPORTUNITY BUT OF ESCALATING SEVERITY, FROM CLASSIFIED SHIP

13  SCHEDULES IN DAN LAYUG'S CASE, TO CLASSIFIED SHIP AND MARINE

14  SCHEDULES AND OTHER PROPRIETARY INFORMATION IN THE CASE OF TODD

15  MALAKI, TO NOW FINALLY THE CASE OF CAPTAIN DUSEK WHERE WE HAVE

16  THE MIGHTY TRIFECTA OF SHIP SCHEDULES, SUBMARINE SCHEDULES AND

17  INFLUENCE EXERTED AT THE HIGHEST LEVELS OF THE SEVENTH FLEET.

18       IN THIS, YOUR HONOR, MAYBE THINK ABOUT IT THIS WAY,

19  LAYUG, AS AN ENLISTED MAN, WAS A LABORER.  MALAKI, WHO I

20  DESCRIBED IN MY SENTENCING PAPERS AS A JACK-OF-ALL-TRADES,

21  TRULY WAS A TRADESMAN.  AND DUSEK, AS A CAPTAIN IN THE UNITED

22  STATES NAVY, WAS NAVY ROYALTY.  HE WAS, AS LEONARD FRANCIS CAN

23  ONLY PUT IT, "THE GOLDEN ASSET," THE GOLDEN GOOSE, AS IT WERE,

24  TO GDMA TO DELIVER BIG DECKS, AIRCRAFT CARRIERS, SHIPS INTO

25  GDMA'S FAT REVENUE PORTS.  THOSE THINGS DIFFERENTIATE THIS

1    DEFENDANT FROM THE DEFENDANTS THAT HAVE COME BEFORE, AND SO WE

2    BELIEVE, YOUR HONOR, THAT IN VIEW OF THOSE EXACERBATING FACTORS

3    THAT THE SENTENCE THAT THE UNITED STATES RECOMMENDED OF

4    44 MONTHS IS APPROPRIATE.

5         I'D TAKE JUST ONE ADDITIONAL MINUTE TO COMMENT ON THE

6    FINE.  WE DEPARTED FROM PROBATION'S RECOMMENDATION ON THE FINE

7    NUMBER AND RECOMMENDED A SIGNIFICANTLY HIGHER NUMBER OF $70,000

8    AS A CRIMINAL FINE.  FIRST, I THINK IT'S APPROPRIATE TO THE

9    CONDUCT.  TO THE EXTENT THAT THE UNITED STATES IS ASKING FOR

10   44 MONTHS IN AN ADVISORY GUIDELINE RANGE OF 37 TO 46 MONTHS, A

11   CRIMINAL FINE AT THE SIMILAR HIGH END OF THE ADVISORY FINE

12   GUIDELINE OF 75 TO $75,000 IS APPROPRIATE.

13        IT ALSO IS APPROPRIATE IN VIEW OF THE DEFENDANT'S

14   SUBSTANTIAL ACCUMULATED ASSETS, WHICH TO DATE TOTAL MORE THAN

15   $450,000, ALL SECURED THROUGH HIS EMPLOYMENT IN THE UNITED

16   STATES NAVY.  BUT IT ALSO IS IN VIEW OF THE FACT THAT HE WAS

17   EMPLOYED FOR THESE LAST SEVERAL YEARS BY THE UNITED STATES NAVY

18   EARNING, AS MR. APPLEGATE POINTED OUT ON THE BACK OF AN

19   ENVELOPE, 60 PERCENT MORE THAN DAN LAYUG AND 35 PERCENT MORE

20   THAN COMMANDER MALAKI, WHERE OVER TIME THAT'S A COUPLE HUNDRED

21   THOUSAND DOLLARS.  AND SINCE THE TIME THAT HE WAS ENGAGED IN

22   THIS CONSPIRACY, THAT'S HUNDREDS OF THOUSANDS OF DOLLARS MORE

23   THAN THESE PEOPLE.

24        SO IF WE'RE COMING UP WITH PROPORTIONAL SENTENCING

25   BASED ON PAY, IT'S NOT JUST BASED ON PAY TODAY VERSUS PAY, IT'S

1   PAY OVER TIME.  SO IF THAT'S A METRIC THAT WE CHOOSE TO USE, I

2   THINK $70,000 IS AS IMPORTANT.

3          MOREOVER, YOUR HONOR, HE HAS THE ABILITY, HE DOESN'T

4   JUST HAVE THE CURRENT ASSETS TO PAY THE FINE, HE HAS THE FUTURE

5   ABILITY TO PAY THE FINE.  THE NAVY HAS TWICE SENT HIM TO SCHOOL

6   TO EARN MASTER'S DEGREES, AND HE'S IN THE PROCESS OF EARNING A

7   THIRD MASTER'S DEGREE.  HE HAS THE ABILITY TO EARN SUBSTANTIAL

8   INCOME INTO THE FUTURE, THUS, MAKING A FINE OF THAT MAGNITUDE

9   APPROPRIATE.

10          YOUR HONOR, IN CLOSING, REAR ADMIRAL YUEN, WHEN HE

11  STOOD BEFORE YOU, SAID "NO AMOUNT OF MONEY IS WORTH BETRAYING

12  OUR NATION OR OUR SHIPMATES, AS WE ENJOY THE PRIVILEGE OF

13  SERVING IN THE UNITED STATES NAVY."  PARTICULARLY UPON THESE

14  EXACERBATED FACTS REAL ADMIRAL YUEN'S WORDS I THINK HANG WITH

15  US AT EACH OF THESE SENTENCINGS BUT PARTICULARLY TODAY.

16          OUR RECOMMENDED SENTENCE OF 44 MONTHS, YOUR HONOR,

17  TAKES INTO ACCOUNT ALL THE FACTORS I'VE DESCRIBED, ALL THE

18  PERSONAL HISTORY AND CHARACTERISTICS OF THE DEFENDANT, BOTH

19  GOOD AND BAD, PRIMARILY THE NATURE AND CIRCUMSTANCES OF THE

20  OFFENSE, AND THE OTHER STATUTORY FACTORS OF SENTENCING, AND FOR

21  ALL THOSE REASONS -- AND WE APPRECIATE THE COURT'S TIME AND

22  PATIENCE AND FORBEARANCE -- WE BELIEVE A SENTENCE OF 44 MONTHS

23  IS APPROPRIATE.

24          THE COURT:  ONE QUESTION BEFORE YOU SIT DOWN, MR.

25  PLETCHER, ANY COMMENTS WITH REGARD TO THE REQUEST FOR RDAP OR

1        IS THAT AGREEABLE WITH THE GOVERNMENT?

2             MR. PLETCHER:  YOU KNOW, YOUR HONOR, I DON'T HAVE ANY

3    INFORMATION TO ASSIST THE COURT.  I SAW THE INFORMATION IN THE

4    SENTENCING PAPERS.  I READ THE INFORMATION IN THE PRESENTENCE

5    REPORT.  I DON'T HAVE ANY CURRENT INFORMATION AS TO WHETHER

6    THAT'S APPROPRIATE OR NOT.  WHAT I THINK MR. APPLEGATE ASKED

7    FOR WAS THAT HE BE SCREENED FOR THE RDAP PROGRAM.

8             THE COURT:  EXACTLY.  I THINK THAT'S APPROPRIATE THAT

9    THE BUREAU OF THE PRISONS SCREEN HIM FOR IT, AND IF IT'S

10   APPROPRIATE, HE SHOULD HAVE IT.

11            MR. PLETCHER:  ABSOLUTELY.  I CAN SEE THE POSSIBILITY

12   THAT NOT JUST THE RDAP PROGRAM IS APPROPRIATE, BUT ALSO IF

13   THERE'S EMOTIONAL HEALTH TREATMENT AVAILABLE THAT THAT ALSO BE

14   AN APPROPRIATE TREATMENT SOUGHT WITHIN THE INCARCERATION

15   FRAMEWORK.  THANK YOU, YOUR HONOR.

16            THE COURT:  THANK YOU, MR. PLETCHER.

17            ANYTHING FROM PROBATION.

18            THE PROBATION OFFICER:  NOT UNLESS YOUR HONOR HAS ANY

19   QUESTIONS.

20            THE COURT:  NOT AT THIS TIME.

21            MR. APPLEGATE, MR. DUSEK, WHY DON'T YOU TAKE THE

22   PODIUM.  I'M READY TO PROCEED.  ARE THERE ANY CONCLUDING

23   COMMENTS OR HAS EVERYTHING BEEN SAID, MR. APPLEGATE?

24            MR. APPLEGATE:  YOUR HONOR, I BELIEVE EVERYTHING'S BEEN

25   PRESENTED TO THE COURT.

1          THE COURT:  THE COURT HAS ADEQUATE INFORMATION TO

2     EXERCISE SENTENCING DISCRETION THIS MORNING.  I KNOW THIS CASE

3     WELL.  I SPENT A LOT OF TIME LOOKING AT THIS FILE, MR. DUSEK,

4     AS YOU MIGHT WELL IMAGINE, AND I'M LOOKING FOR A SENTENCE

5     THAT'S SUFFICIENT BUT NOT GREATER THAN WHAT'S NECESSARY, GIVEN

6     THE TOTALITY OF EVERYTHING THAT'S BEEN BROUGHT BEFORE THE COURT

7     THIS MORNING, BOTH WITH REGARD TO YOU INDIVIDUALLY AND THE

8     SITUATION THAT YOU FIND YOURSELF IN, AND THE CIRCUMSTANCES OF

9     ALL OF THIS.

10         AS I LOOK AT THIS CASE, AND I LOOK AT THE CASES THAT

11    RELATES TO YOU AND THIS MOMENT, IT'S TRULY UNIMAGINABLE TO THE

12    COURT THAT SOMEBODY WITH YOUR POSITION IN THE UNITED STATES

13    NAVY WOULD SELL OUT ON THE BASIS OF WHAT WAS PROVIDED TO YOU,

14    WHICH AS I UNDERSTAND IT, SIR, WERE HOTEL ROOMS, MEALS,

15    ENTERTAINMENT, THE SERVICES OF A PROSTITUTE, AND ON THAT BASIS

16    YOU PERMITTED YOURSELF TO BE INFLUENCED AND DIRECTED THINGS,

17    NOT AS MUCH AS THE GOVERNMENT INDICATES AND AGREES, NOT SO MUCH

18    TO THE NAVY'S DETRIMENT, BUT TO GLENN DEFENSE MARINE'S BENEFIT,

19    AND POTENTIALLY JEOPARDIZING NATIONAL SECURITY.  I THINK THAT

20    DEFIES EXPLANATION AS TO WHAT WOULD CAUSE SOMEBODY WITH YOUR

21    TYPE OF CAREER, WHICH WAS STELLAR UP TO THAT POINT, TO DO SUCH

22    A THING.

23         I DO UNDERSTAND YOU'VE DONE A LOT OF POSITIVE THINGS,

24    AND I'VE READ A LOT OF THAT IN YOUR PAPERWORK, AND I UNDERSTAND

25    THAT YOU WERE -- YOU SELF-REPORTED, BUT AFTER YOU WERE SOMEWHAT

1    CONFRONTED, AND AFTER YOU DELETED THE EMAILS.  I AM GOING TO

2    STAY IN THE GUIDELINE RANGE, AND IT'S BECAUSE I ACKNOWLEDGE THE

3    POSITIVES, IN ADDITION TO THE NEGATIVES, THAT I'M NOT GOING

4    ABOVE GUIDELINE RANGE.

5         LET ME BEGIN NOW WITH THOSE COMMENTS AND PROCEED WITH

6    THE CALCULATION THAT I MUST MAKE.

7         THE BASE OFFENSE LEVEL IS A 14.  BECAUSE MORE THAN ONE

8    BRIBE OCCURRED, THERE'S A PLUS 2 ADDED.  BECAUSE OF THE AMOUNT

9    OF LOSS, THERE'S A PLUS 4 ADDED.  BECAUSE OF YOUR POSITION AS A

10   PUBLIC OFFICIAL, ANOTHER PLUS 4.  "PUBLIC OFFICIAL" IS SOMEWHAT

11   UNDERSTATING THAT BECAUSE AS A CAPTAIN IN THE NAVY I DON'T KNOW

12   IF ROYALTY IS THE RIGHT WORD, BUT VERY CLOSE TO THAT, SIR,

13   SOMEBODY EVERYBODY LOOKED UP TO AND TRUSTED WITH OUR BIGGEST

14   NATIONAL SECURITY MATTERS.

15        SO IF WE ADD ALL THAT UP, IT BECOMES AN ADJUSTED

16   OFFENSE LEVEL OF 24.  HAVING MADE POOR DECISIONS, YOU'VE DONE

17   THE RIGHT THING, YOU'VE ACCEPTED RESPONSIBILITY, AND THAT'S A

18   3-POINT REDUCTION, TAKING ME TO A TOTAL OFFENSE LEVEL OF 21.

19        YOU HAVE NO CRIMINAL HISTORY POINTS.  YOU'RE IN

20   CRIMINAL HISTORY CATEGORY 1, AND THAT'S A RANGE OF IMPRISONMENT

21   OF 37 TO 46 MONTHS.  AS I SAID AT THE OUTSET, I'VE SPENT A

22   GREAT DEAL OF TIME THINKING ABOUT THIS.  I'VE READ ABSOLUTELY

23   EVERYTHING.  AND WHILE I'M NOT VARYING UPWARD, I DO THINK THE

24   UPPER END OF THIS GUIDELINE RANGE IS WHAT'S APPROPRIATE.  I

25   DECLINE TO EXERCISE THE COURT'S DISCRETION IN ANY FASHION TO

1    VARY DOWNWARD.  I DON'T THINK THAT'S APPROPRIATE IN YOUR CASE.

2    SO TO GO DOWN TO WHAT OTHER LOWER-RANKING PEOPLE MAY HAVE

3    GOTTEN, SIR, IS IN NO WAY SOMETHING THIS COURT THINKS IS

4    APPROPRIATE, GIVEN THE TOTALITY OF WHAT YOU BRING BEFORE THE

5    COURT.

6         AGAIN, I'VE CONSIDERED ALL THE 3553(A) FACTORS, THE

7    NATURE AND CIRCUMSTANCES, THE SERIOUSNESS OF THIS OFFENSE.  I'M

8    NOT EVEN SURE THAT THE SERIOUSNESS OF THIS OFFENSE CAN BE

9    TOTALLY QUANTIFIED BECAUSE IT'S BEYOND OUR ABILITY TO VALUE THE

10   THINGS THAT WERE DISCLOSED AND SHARED WITH GLENN DEFENSE

11   MARINE.  SO PART OF MY CONSIDERATION IS PROTECTING THE PUBLIC,

12   DETERRING FUTURE PEOPLE FROM DOING THIS.

13        I HAVE NO DOUBT, SIR, THAT YOU WILL NEVER BE IN THE

14   COURTROOM AGAIN, BUT THERE ARE OTHER PEOPLE WHO MAY CONSIDER

15   SUCH A THING, AND I THINK GENERAL DETERRENCE IS A SIGNIFICANT

16   CONCERN.

17        SO IN SAYING ALL OF THIS, SIR, I'M IMPOSING THE UPPER

18   END OF 46 MONTHS IN THE CUSTODY OF THE BUREAU OF THE PRISONS.

19   THAT'S GOING TO BE FOLLOWED BY A PERIOD OF THREE YEARS OF

20   SUPERVISED RELEASE.  DURING THOSE THREE YEARS, MR. DUSEK, IT'S

21   A TIME WHEN YOU'RE NOT TO VIOLATE ANY LAWS, STATE, FEDERAL OR

22   LOCAL, BECAUSE IF YOU VIOLATE A LAW, YOU COULD BE BROUGHT BACK

23   BEFORE THE COURT AND YOU COULD SERVE ADDITIONAL TIME IN

24   CUSTODY.

25        WHILE YOU'RE IN CUSTODY, I'M GOING TO ASK THAT YOU BE

1      SCREENED FOR THE RDAP PROGRAM.  I KNOW THAT THAT'S YOUR

2      REQUEST, AND QUITE HONESTLY, I DON'T THINK THE COURT HAS

3      SUFFICIENT INFORMATION TO MAKE THAT DETERMINATION, BUT I

4      CERTAINLY HAVE NO OBJECTION, AND IF THE BUREAU OF THE PRISONS

5      THINKS YOU'RE AN APPROPRIATE PARTICIPANT IN THAT PROGRAM, SIR,

6      YOU'LL BE PLACED IN THAT PROGRAM.

7           ALL THE STANDARD MANDATORY CONDITIONS OF SUPERVISION

8      ARE GOING TO APPLY DURING THE THREE YEARS OF SUPERVISION, BUT

9      THE FOLLOWING SPECIAL CONDITIONS APPLY:

10          YOU'RE GOING TO REPORT ALL VEHICLES THAT YOU OWN OR

11     OPERATE OR IN WHICH YOU HAVE AN INTEREST TO PROBATION.

12          THE SECOND CONDITION IS A SEARCH CONDITION, SUBMIT YOUR

13     PERSON, PROPERTY, RESIDENCE, OFFICE, VEHICLE TO A SEARCH

14     CONDUCTED BY PROBATION, PROVIDED IT'S DONE AT A REASONABLE

15     TIME, IN A REASONABLE MANNER, BASED UPON A REASONABLE SUSPICION

16     OF CONTRABAND OR EVIDENCE OF A VIOLATION OF A CONDITION OF

17     RELEASE.

18          IF YOU DON'T AGREE TO A SEARCH, SIR, THAT CAN BE

19     GROUNDS FOR REVOKING YOUR SUPERVISION, AND WHOEVER LIVES WITH

20     YOU MUST KNOW THAT YOUR HOME COULD BE SUBJECT TO SEARCH.

21          YOU'RE TO PROVIDE COMPLETE DISCLOSURE OF BUSINESS

22     FINANCIAL RECORDS TO THE PROBATION OFFICER AS REQUESTED.

23          YOU'RE GOING TO NOTIFY THE COLLECTIONS UNIT OF THE

24     UNITED STATES ATTORNEY'S OFFICE OF ANY INTEREST IN PROPERTY

25     OBTAINED, DIRECTLY OR INDIRECTLY, INCLUDING ANY INTEREST

1    OBTAINED UNDER ANY OTHER NAME OR ENTITY, INCLUDING A TRUST, A

2    PARTNERSHIP OR A CORPORATION UNTIL YOUR FINE AND RESTITUTION

3    ARE PAID IN FULL.

4         YOU'RE GOING TO NOTIFY THE COLLECTIONS UNIT OF THE U.S.

5    ATTORNEY'S OFFICE BEFORE TRANSFERRING ANY INTEREST IN PROPERTY

6    OWNED DIRECTLY OR INDIRECTLY, INCLUDING ANY INTEREST HELD OR

7    OWNED UNDER ANY OTHER NAME OR ENTITY, INCLUDING A TRUST,

8    PARTNERSHIP OR CORPORATION.

9         THE SPECIAL ASSESSMENT IS $100 AND CAN BE PAID

10   FORTHWITH.  I SPENT A LOT OF TIME THINKING ABOUT THE FINE.  I

11   THINK A $70,000 FINE IS APPROPRIATE, AND I'M IMPOSING THAT.

12   THE RESTITUTION OF $30,000 HAS BEEN AGREED TO, AND IT'S MY

13   UNDERSTANDING YOU'RE GOING TO PAY THAT FORTHWITH, SIR?

14        THE DEFENDANT:  YES, YOUR HONOR.

15        THE COURT:  SO THE RESTITUTION IS GOING TO BE PAID

16   FORTHWITH.

17        WITH REGARD TO THE FINE, WOULD YOU LIKE A PAYMENT

18   SCHEDULE?  WHAT'S THE REQUEST, MR. APPLEGATE?

19        MR. APPLEGATE:  PAYMENT SCHEDULE.

20        THE COURT:  I'M GOING TO SUGGEST MAYBE $500 A MONTH.

21        MR. APPLEGATE:  THAT'S FINE, YOUR HONOR.

22        THE COURT:  WE'LL SET THAT AT $500 A MONTH UPON HIS

23   RELEASE FROM CUSTODY.

24        NOW, YOU'RE REQUESTING A DESIGNATION TO FCI SHERIDAN,

25   AND A SELF-SURRENDER DATE OF JUNE 15TH?

1          MR. APPLEGATE:  YES, YOUR HONOR.  I DISCUSSED THAT WITH

2     MR. PLETCHER.

3          THE COURT:  SO THERE'S NO GOVERNMENT OBJECTION?

4          MR. PLETCHER:  NO, YOUR HONOR.

5          THE COURT:  I'M CERTAINLY WILLING TO DO THAT.  I'M SURE

6     THAT SHERIDAN HAS THE RDAP PROGRAM BECAUSE I WOULD LIKE THAT

7     EVALUATION DONE EARLY.  IF HE'S IN THE PROGRAM, IT'S A BENEFIT

8     ON MANY LEVELS.

9          MR. DUSEK, IN YOUR PLEA AGREEMENT, ON PAGE 19 AND 20,

10    YOU GAVE UP YOUR RIGHT TO APPEAL OR COLLATERALLY ATTACK THE

11    BOTH THE JUDGMENT IN THIS CRIMINAL CASE AND THE SENTENCE THAT I

12    JUST IMPOSED, SIR.  DO YOU UNDERSTAND THAT?

13         THE DEFENDANT:  YES, YOUR HONOR.

14         THE COURT:  LET ME ASK YOU, MR. APPLEGATE, MR. PILCHAK,

15    PROBATION, IF THERE'S ANYTHING THAT I DID NOT COVER OR ANYTHING

16    ELSE WE NEED TO COVER THIS MORNING?

17    (DISCUSSION HELD OFF THE RECORD.)

18         THE COURT:  I CALLED YOU MR. PILCHAK BECAUSE YOUR

19    COLLEAGUE MR. PILCHAK WAS HERE.  MR. PLETCHER, I APOLOGIZE.

20         THE PROBATION OFFICER:  YOUR HONOR, CAN YOU PLEASE

21    CONFIRM A SELF-SURRENDER DATE FOR PROBATION?

22         THE COURT:  OH, CERTAINLY.  THE REQUEST WAS FOR JUNE

23    THE 15TH OF THIS YEAR AND THERE WAS NO OBJECTION FROM THE

24    GOVERNMENT.  THAT WAS IN THE PAPERS.

25         THE PROBATION OFFICER:  OKAY.  THANK YOU.

1          MR. PLETCHER:  YOUR HONOR, THE ONLY OTHER THING THAT I

2     THINK THE COURT SHOULD MAKE EXPRESS IS HOW THE COURT WOULD LIKE

3     TO HANDLE INTEREST.

4          THE COURT:  I WAS JUST GOING TO ASK IF INTEREST IS

5     WAIVED ON THIS OR NOT.

6          MR. PLETCHER:  IT DOESN'T SEEM APPROPRIATE WITH RESPECT

7     TO THE ABILITY TO PAY ISSUE, WHICH IS WHY WE USUALLY REMIT

8     INTEREST.

9          THE COURT:  THE RESTITUTION IS GOING TO BE PAYABLE

10    FORTHWITH, SO IT'S JUST INTEREST ON THE 70,000.

11         MR. PLETCHER:  RIGHT.

12         THE COURT:  IT WOULDN'T START TO RUN UNTIL AFTER HE'S

13    OUT OF CUSTODY.

14         MR. PLETCHER:  THAT'S CORRECT.

15         THE COURT:  WHAT ARE YOU REQUESTING, THAT WE NOTE THE

16    INTEREST IS DUE AND PAYABLE AND IS RUNNING AT THE REQUIRED

17    AMOUNT?

18         MR. PLETCHER:  THAT'S ALL.  IF IT'S NOT BEING REMITTED,

19    THEN I THINK IT JUST OPERATES BY STATUTE.

20         THE COURT:  I THINK IT DOES, TOO, BUT THERE HADN'T BEEN

21    AN AGREEMENT TO THAT FACT, THAT IT WOULD BE REMITTED.

22         MR. PLETCHER:  NO.

23         THE COURT:  SO THEN THERE IS INTEREST ON THE FINE.

24         ANYTHING ELSE?  THERE'S NO OBJECTION TO THE

25    SELF-SURRENDER.

1          WE'RE GOING TO GIVE YOU, MR. DUSEK, COPIES OF THE

2     CONDITIONS THAT THE COURT HAS IMPOSED, SIR.  KEEP THAT

3     PAPERWORK, IT'S IMPORTANT.

4          MR. APPLEGATE, ANYTHING ELSE, SIR?

5          MR. APPLEGATE:  I DON'T BELIEVE SO, YOUR HONOR.  THANK

6     YOU.

7          THE COURT:  STATUS FOR THIS MATTER WILL BE JUNE THE

8     17TH AT 9:00 A.M.

9          THAT CONCLUDES THIS MATTER.

10          MR. APPLEGATE:  THANK YOU, YOUR HONOR.

11          MR. PLETCHER:  THANK YOU, YOUR HONOR.

12     (THE HEARING CONCLUDED.)

13

14

15

16                   C E R T I F I C A T E

17

18          I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
       QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
19     STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
       ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
20     ABOVE-ENTITLED MATTER ON MARCH 25, 2016; AND THAT THE FORMAT
       USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
21     STATES JUDICIAL CONFERENCE.

22

23     DATED:  APRIL 3, 2016          /S/ GAYLE WAKEFIELD_____
                                      GAYLE WAKEFIELD, RPR, CRR
24                                    OFFICIAL COURT REPORTER

25